FILED
United States Court of Appeals
Tenth Circuit

**July 10, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BORCHARDT RIFLE CORP.,

    Plaintiff-Appellant,

v.

NANCY F. COOK, Director of Industry
Operations, Bureau of Alcohol, Tobacco,
Firearms and Explosives,

    Defendant-Appellee.

No. 11-2086

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:08-CV-01188-JB-WDS)

Submitted on the briefs:

Richard E. Gardiner, Fairfax, Virginia, for Plaintiff-Appellant.

Kenneth J. Gonzales, United States Attorney; Tony West, Assistant Attorney General;
Michael S. Raab and Benjamin S. Kingsley, Attorneys, Appellate Staff, Civil Division,
Department of Justice, Washington, D.C., for Defendant-Appellee.

Before **BRISCOE,** Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.

**BRISCOE**, Chief Judge.

Borchardt Rifle Corporation (Borchardt) appeals the district court's grant of

summary judgment affirming the revocation of its federal firearms license. After an

initial compliance inspection, the Bureau of Alcohol, Tobacco, Firearms and Explosives

(ATF) granted Borchardt a license in 2002. The ATF conducted a second inspection in

2007 and detected numerous violations of the Gun Control Act, 18 U.S.C. § 923(g)(1)(A).

Some of the 2007 violations had also been noted in 2002. In 2008, the ATF revoked

Borchardt's license based on these repeat violations. Borchardt filed a petition for review

in federal district court and challenged the revocation by arguing that Borchardt's owner,

Albert Story, did not willfully violate the Act. On ATF's motion for summary judgment,

the district court sustained the administrative revocation. We have jurisdiction under 28

U.S.C. § 1291 and affirm.[1]

## I

Under 18 U.S.C. § 923(d)(1), a federal firearms license is required for anyone

"engage[d] in the business of importing, manufacturing, or dealing in firearms." A

licensed dealer must keep accurate and detailed "records of importation, production,

shipment, receipt, sale, or other disposition of firearms at his place of business for such

period, and in such form, as the Attorney General may by regulations prescribe." 18

U.S.C. § 923(g)(1)(A). In the present case, the relevant regulations include a requirement

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

that the manufacturer or dealer record in a record book the model, caliber or gauge, and serial number of each firearm it manufactures or acquires, 27 C.F.R. §§ 478.123, 478.125(e), and a requirement that any licensed firearms importer, manufacturer, or dealer complete and maintain in its records an ATF Form 4473 for every sale of a firearm to a non-licensee. Id. § 478.124(a). Form 4473 contains information about the transferor, transferee, and firearm; the type of identification provided by the transferee; a National Instant Criminal Background Check System ("NICS") background check for the transferee; signatures from the transferor and transferee; and the date of the transfer. Id. § 478.124(c). The Director of Industry Operations in a Field Division of the ATF may revoke a license when the licensee "has willfully violated any provision" of the Gun Control Act or rules promulgated thereunder.[2]  18 U.S.C. § 923(e).

Borchardt, owned and operated solely by Albert Story, received a federal firearms license for the manufacture and sale of firearms in 2002. Directly or indirectly, Story has held three licenses since 1992: the first ran from 1992 until 2005, the second from 2001 to 2004, and this latest license from 2002 until its revocation in 2008. Story had his own license and was inspected in 2002 when he sought a license for Borchardt, the corporation he formed to take over his business. In 2007, the ATF inspected Borchardt, still operated by Story, and that inspection resulted in the license revocation at issue here.

---

[2] "The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ." 18 U.S.C. § 923(e).

In the June 2002 inspections, an ATF officer inspected Story's records and business premises as part of Story's application inspection for the Borchardt license application. During the inspection, Story signed an acknowledgment of ATF rules and procedures, stating that the rules and procedures were thoroughly explained to him by an ATF inspector and all of his questions regarding the rules were answered. The inspector found four violations—failure to properly record necessary information in the record book, failure to properly complete more than one-third of the Form 4473s on file, failure to pay taxes associated with gun sales, and failure to distinguish personal inventory from business inventory. Story acknowledged these mistakes and signed a statement that he had corrected them.

In August 2007, another ATF agent conducted a second compliance inspection, reviewing Story's records from 2004 to 2007.[3] The 2007 Inspection Report lists twelve violations, with many consisting of multiple infractions. In total, Story had fifty-two Form 4473s on file, and forty-three of those forms contained errors.[4] Several violations were repeated from the 2002 inspection, indicating that Story had already been informed that the conduct at issue was a violation but had still repeated the same conduct. The

---

[3] After Borchardt received its license, Story began conducting this business through the corporation. For clarity, we continue to refer to the Borchardt corporation as Story, as he is the corporation's sole owner and operator, and because his state of mind is at issue in this case.

[4] By year, all thirteen of the 2004 forms had errors, all seven of the 2005 forms had errors, fourteen of the twenty 2006 forms had errors, and nine of the twelve 2007 forms had errors.

repeated violations were violations of 27 C.F.R. 478.21(a) (failure to properly execute Form 4473 in seventeen instances); 27 C.F.R. 478.123(g) (failure to properly maintain the record book); 27 C.F.R. 478.124(b) (failure to properly file Form 4473 in twelve instances); 27 C.F.R. 478(c)(1) (failure to properly complete Form 4473 in thirty-two instances); 27 C.F.R. 478.124(c)(5) (failure to sign and date Form 4473 in twelve instances).[5] Story stated that the repeat violations were all oversights and that he could not account for the mistakes.

In April 2008, Nancy Cook, Director of Industry Operations for the Phoenix Field Division of ATF, revoked Borchardt's license based on these violations. Although Story acknowledged during the administrative process that "most of these errors are oversights and [his] attention to paper work and book keeping has sometimes been lax and inadequate," Aplt. App. at 100, and that his "paperwork is very sloppy," id. at 261, he maintained that he did not do "anything purposely illegal." Id. After an administrative hearing, Cook issued a Final Notice of Revocation of the license based on her determination that Story's twelve violations constituted willful violations of ATF regulations under the Gun Control Act.

---

[5] His other violations included failure to report the loss of a firearm in a timely fashion; two instances of transfer of a firearm without conducting a background check; transfer of a firearm without completing Form 4473; failure to properly record type of identification used on Form 4473 in six instances; failure to record NICS information on Form 4473 in twenty-eight instances; failure to record firearm type on Form 4473 in five instances; failure to properly add information to the record book in fifty-nine instances.

## II

Pursuant to 18 U.S.C. §§ 923(e) and (f), in December 2008, Story filed a petition in federal district court for de novo review of the revocation. In relevant part, Story argued that his violations were not <u>willful</u> violations, as required for a license revocation under 18 U.S.C. § 923(e).[6] Cook moved for summary judgment based on the facts as established in the administrative record, and Story did not contest the facts relevant to counts V, IX, and X—the counts determined by summary judgment and at issue in this appeal. Cook did not maintain that Story purposefully disregarded the statutory requirements; instead Cook argued that Story was plainly indifferent to the requirements of the Gun Control Act and that this repeated indifference rose to the level of willfulness.

After reviewing the evidence, the district court concluded that "the undisputed evidence demonstrates numerous repeated violations of the regulations which gave rise to Count V (duplicate and triplicate serial numbers on Forms 4473), Count IX (Forms 4473 missing firearm identification information) and Count X (twelve Forms 4473 missing Borchardt Rifle's signature and/or date) in Borchardt Rifle's petition for review, . . . [and that] these violations demonstrated plain indifference and thus constitute willful violations under 18 U.S.C. § 923." <u>Id.</u> at 44.

In drawing this conclusion, the district court relied on the Fifth Circuit's

---

[6] The petition discusses the grounds for revocation in twelve "counts," and the twelve counts correspond to the twelve grounds for revocation listed in the Notice of Revocation of License.

articulation of the standard applicable to establish willfulness under § 923: "[t]o prove that a firearms dealer 'willfully' violated the law, ATF must show that the dealer either intentionally or knowingly violated his obligations or was recklessly or plainly indifferent despite the dealer's awareness of the law's requirements." Id. at 49 (quoting Athens Pawn Shop, Inc. v. Bennett, 364 F. App'x 58, 59 (5th Cir. 2010) (unpublished)). The district court noted that the Tenth Circuit has not yet addressed the standard for willfulness under § 923, but the district court proceeded to embrace the Athens articulation as the clearest expression of the standard adopted by all seven circuits that have addressed the issue. Id. See also Athens, 364 F. App'x. at 59; Armalite, Inc. v. Lambert, 544 F.3d 644, 648 (6th Cir. 2008); RSM, Inc. v. Herbert, 466 F.3d 316, 321–22 (4th Cir. 2006); Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 497 (7th Cir. 2006); Willingham Sports, Inc. v. ATF, 415 F.3d 1274, 1277 (11th Cir. 2005); Perri v. ATF, 637 F.2d 1332, 1336 (9th Cir. 1981); Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979).

The district court astutely noted that the parties' real dispute was not over what standard must be met to establish willfulness, but rather what type of evidence is needed to prove willfulness. Story argued that Cook was required to present direct evidence of Story's state of mind at the time the violations of the Gun Control Act occurred. In contrast, Cook relied largely upon circumstantial evidence—in particular, Story's repeated violations of the Act after the ATF advised him of the Act's reporting requirements. The district court agreed with Cook and concluded that Story's state of mind could be proven through circumstantial evidence, and that the evidence of Story's

7

repeated violations of the Gun Control Act sufficed to demonstrate his plain indifference to the Act's requirements. Id. at 53, 56–58 (citing RSM, 466 F.3d at 317 ("Because Valley Gun repeatedly violated requirements of the Gun Control Act with knowledge of the law's requirements and after repeated warnings by ATF, we hold that Valley Gun's plain indifference toward its known legal obligations satisfies the willfulness requirements in 18 U.S.C. § 923(e).")). In particular, the district court found that the high error rate, Story's testimony that the errors were "oversights," the ATF's previous instruction to Story on how to comply with the law, and the errors repeated from the 2002 inspection "conclusively establish[] that [Story] was aware of the regulations imposed on [him] and yet, despite that knowledge, [Story] continued to violate those same regulations . . . demonstrat[ing] plain indifference to [his] legal obligations." Id. at 41. Based on this conclusion, the district court granted Cook's motion for summary judgment and affirmed her decision to revoke Borchardt's federal firearms license.

### III

Borchardt timely appealed the district court's decision, arguing that:

1. "[t]he district court erred because, in applying the reckless standard, the district court considered [Story]'s previous violations as evidence of recklessness and did not solely focus on the evidence of [Story]'s state of mind at the time the violations were committed;" Aplt. Br. at 7, and

2. the violations were negligent but not reckless and thus not willful.

8

### A. *Standard of review*.

We "review[] the grant of summary judgment de novo, applying the same standards as the district court" pursuant to Federal Rule of Civil Procedure 56(c). <u>Salazar v. Butterball</u>, 644 F.3d 1130, 1136 (10th Cir. 2011). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[7] Finally, in reviewing a petition for judicial review of an ATF license revocation, the court may grant relief only if it "decides that the Attorney General was not authorized to deny the application or to revoke the license." 18 U.S.C. § 923(e). The parties agree that even one willful violation of the Gun Control Act could justify the revocation of Borchardt's license.

### B. *Plain indifference toward known legal obligations meets the willfulness requirement of 18 U.S.C. § 923(e), and this plain indifference may be shown with circumstantial evidence.*

This case presents two issues which our court has not yet addressed: first, what

---

[7] Story states that, on a motion for summary judgment, "the court must 'disregard all evidence favorable to the moving party. . . .'" Aplt. Br. at 13. (citing <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 151 (2000)). The full <u>Reeves</u> quote actually states:

> [a]lthough the court should review the record as a whole when considering a motion for judgment as matter of law, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.

<u>Id.</u> (internal citations and quotation marks omitted).

standard should we apply to measure willfulness in the 18 U.S.C. § 923(e) context, and

second, what type of evidence (direct or circumstantial) can be used to meet that standard.

Here, the district court determined that a willful violation meant that the "dealer

either intentionally or knowingly violated his obligations or was recklessly or plainly

indifferent despite the dealer's awareness of the law's requirements." Aplt. App. at 49

(quoting Athens, 364 F. App'x at 59 ).[8] The seven circuits that have addressed the

applicable standard for willfulness in the 18 U.S.C. § 923(e) context have embraced

constructions similar to those used by the district court in this case.[9] This precedent from

the other circuits is persuasive. We hold that, in this context, the willfulness requirement

of 18 U.S.C. § 923(e) is met by plain indifference toward known legal obligations.

The parties also dispute the appropriate method of proof to show plain indifference

under 18 U.S.C. § 923(e). Is direct evidence of plain indifference required, or is

---

[8] The parties also agree that "willful" in this context means intentional, knowing, reckless, or plainly indifferent. Aplt. Br. at 6; Aplee. Br. at 3. Nevertheless, Story generally refers to recklessness as the required standard in his brief.

[9] Athens, 364 F. App'x at 59; Armalite, 544 F.3d at 647 ("[A] dealer violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them."); RSM, 466 F.3d at 317 ("plain indifference toward . . . known legal obligations satisfies the willfulness requirement"); Article II Gun Shop, 441 F.3d at 497 ("must prove that the dealer knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record keeping requirements"); Willingham Sports, 415 F.3d at 1277 ("a showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness"); Perri, 637 F.2d at 1336 ("Willful violation of the Gun Control Act is established when a firearm dealer understands the requirements of the law, but knowingly fails to follow them or is indifferent to them."); Lewin, 590 F.2d at 269 ("plain indifference to the regulatory requirements will suffice as a 'willful' violation justifying denial of license").

circumstantial evidence enough? Here, the district court agreed with Cook that Story's prior violations after he was fully advised of the law's requirements and the sheer number of current violations were sufficient to show plain indifference. Story argues that these prior acts provide no evidence of Story's state of mind at the time the violations occurred,[10] asserting that "the district court erred because . . . [it] considered Borchardt's previous violations as evidence of the recklessness and did not focus solely on the evidence of Borchardt's state of mind at the time the violations were committed." Aplt. Br. at 7.

As with the applicable standard for willfulness, this court has not addressed whether evidence of a gun dealer's past violations can establish that new violations were committed with plain indifference. But the seven other circuits that have addressed this question have all concluded "that a dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference." Willingham Sports, 415 F.3d at 1277 (collecting cases); Athens, 364 F. App'x at 60 ("Repeated violation of known legal requirements is sufficient to establish willfulness.").

Our own precedent also suggests that circumstantial evidence can suffice to

---

[10] Story argues that we cannot consider evidence of any violations that were not ruled on by the court in its summary judgment. But the district court relied on the evidence of other violations, and Story has not argued that the other violations did not occur. Here, we consider all of Story's uncontested violations as presented in the record in determining whether there was sufficient evidence to conclude that these particular violations were the result of plain indifference.

11

establish state of mind. We have noted in the criminal context that "the element of willfulness is rarely provable by direct evidence, and most often can be proven only by inference from the evidence introduced." United States v. Brown, 996 F.2d 1049, 1057 (10th Cir. 1993) (internal citation and quotation marks omitted). Moreover, use of evidence of past violations to show state of mind—e.g., intent or lack of accident—is hardly unusual; we admit evidence under Federal Rule of Evidence 404(b) for just such a purpose. See, e.g., United States v. Rothbart, 723 F.2d 752, 755 (10th Cir. 1983) ("In this case where the sole issue was defendant's willfulness, the evidence [that defendant had previously filed late personal income tax returns] was properly admitted to show intent and absence of mistake.").

We join our sister circuits and hold that, after a dealer has been informed of the Gun Control Act requirements and warned of violations, a dealer's subsequent repeat violations suffice to show plain indifference to the statutory requirements. RSM, 466 F.3d at 322 ("[A] court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful.").

### C. The district court correctly concluded that Story acted with plain indifference to the requirements of the Gun Control Act.

Story argues that his violations do not show anything more than mere negligence in failing to comply with the Gun Control Act. Story further suggests that the legislative

12

history for 18 U.S.C. § 923(e),[11] which indicates that the intention behind adding "willfully" to § 923(e) was to avoid revoking licenses for "inadvertent errors or technical mistakes," precludes a determination that his negligent mistakes in this case showed willfulness. Given the evidence presented in this record, this argument is not convincing.

First, Story maintains that his actual error rate was very low, roughly three to six percent, and that this low error rate only supports a finding of negligence. He arrives at these numbers by dividing the number of incorrectly completed information blanks by the number of Form 4473s at issue multiplied by the number of information blanks per form. Aplt. Reply Br. at 3. This approach obscures the fact that ninety percent of Story's Form 4473s were completed incorrectly. Although the completion of each form presents numerous opportunities for error, on the whole Story's error rate was very high. In light of his numerous past violations, when coupled with his present high error rate, more than mere negligence is evident.

Second, Story argues that the mistakes were due to carelessness, as Story testified at the administrative hearing. He notes that the Supreme Court has equated carelessness to negligence, not plain indifference. This argument fails because it relies on the reasoning behind Story's first argument, that the past violations should not be considered evidence of Story's state of mind at the time he committed the infractions. Based on our

---

[11] Story cites language from S. Rep. No. 98–583, the report for a bill substantially similar to the bill that became § 923(e), because the bill that became § 923(e) had no Senate Report.

holding here, the evidence in the record compels the conclusion that Story acted with plain indifference, in spite of his own statements that the violations resulted from carelessness. Story's continued carelessness, in the face of Story's acknowledged prior violations and his understanding of the Gun Control Act requirements, amounts to the plain indifference necessary to support Cook's willfulness determination.

In summary, an ATF officer inspected Story's records in 2002 and found several violations of the Gun Control Act. Story acknowledged the mistakes and signed a statement that he understood the pertinent regulations and had corrected the mistakes. In August 2007, another ATF agent conducted a second compliance inspection and found Story had made numerous repeated mistakes in records from 2004 through 2007. Based on the standard we have adopted herein, this undisputed evidence established that the violations were plainly indifferent as a matter of law. Story knew of the regulations, had violated them in the past and been warned of the need for compliance, and then continued to violate the same regulations.[12] This evidence shows Story was plainly indifferent to his ongoing reporting requirements under the law, despite his awareness of the law's requirements. His plain indifference rises to the level of wilfulness under 18 U.S.C. 923(e). The errors which served as a basis for revocation of Borchardt's federal firearms

---

[12] See Armalite, 544 F.3d at 649–50 (finding willfulness when, after one inspection revealed numerous infractions, a second inspection a year later found errors in over half of the Form 4473s on file); Lewin, 590 F.2d at 269 (continued violations discovered during a compliance inspection two years after a first compliance inspection supported a finding of willfulness).

14

license were not inadvertent errors or technical mistakes, but rather were a systematic and continuing failure to abide by known legal requirements.

## IV

Accordingly, we AFFIRM the district court's grant of summary judgment.